1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Pierce Bainbridge Beck Price & Hecht LLP**
John M. Pierce (SBN 250443)
jpierce@piercebainbridge.com
Carolynn Kyungwon Beck (SBN 264703)
cbeck@piercebainbridge.com
Daniel Dubin (SBN 313235)
ddubin@piercebainbridge.com
600 Wilshire Boulevard, Suite 500
Los Angeles, California 90017-3212
(213) 262-9333

*Attorneys for*
*Plaintiff Alfonso Ribeiro*

THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Alfonso Ribeiro,** an individual, | Case No.  2:18-cv-10417 |
| Plaintiff, | **Complaint for:** |
| v. | 1. **Direct Infringement of Copyright;** |
| **Take-Two Interactive Software, Inc.**; a Delaware corporation; **2K Sports, Inc.**, a Delaware corporation; **2K Games, Inc.**, a Delaware corporation; **Visual Concepts Entertainment**, a California Corporation; and **Does 1 through 50**, inclusive, | 2. **Contributory Infringement of Copyright;** 3. **Violation of the Right of Publicity under California Common Law;** 4. **Violation of the Right of Publicity under Cal. Civ. Code § 3344;** 5. **Unfair Competition under Cal. Bus. & Prof. Code § 17200, et seq.;** 6. **Unfair Competition under 15 U.S.C. § 1125(a)** |
| Defendants. | **Demand for Jury Trial** |

1    Plaintiff Alfonso Ribeiro, aka Ribeiro, ("Plaintiff" or "Ribeiro"), by
2    and through his undersigned counsel, asserts the following claims
3    against Defendants Take-Two Interactive Software, Inc. ("Take-Two"),
4    2K Sports, Inc. ("2K Sports"), 2K Games, Inc. ("2K Games"), Visual
5    Concepts Entertainment ("Visual Concepts") and Does 1 through 50
6    (collectively referred to as "Defendants"), and alleges as follows:

7                            **I.  OVERVIEW**

8        1.    Through their unauthorized use of Ribeiro's highly popular
9    signature dance ("The Dance" or "Dance") in their video game, NBA
10   2K16, Defendants have unfairly profited from exploiting Ribeiro's
11   protected creative expression, likeness, and trademark.

12       2.    Ribeiro is an internationally famous Hollywood star, known
13   for his starring role as Carlton Banks from the hit television series, *The
14   Fresh Prince of Bel-Air*, and as host of *America's Funniest Home Videos*.
15   Ribeiro created his highly recognizable "Dance," that has also been
16   referred to by the public as "The Carlton Dance," which exploded in
17   popularity and became highly recognizable as Ribeiro's signature dance
18   internationally.  The Dance is now inextricably linked to Ribeiro and
19   has continued to be a part of his celebrity persona.

20       3.    Defendants capitalized on Alfonso Ribeiro's celebrity and
21   popularity by selling The Dance as an in-game dance in at least NBA
22   2K16 ("2K16") under the name "So Fresh."  In 2K16, players can unlock
23   and then purchase The Dance to customize their 2K16 MyPlayer
24   avatars. Defendants also include at least one dance wholly similar to
25   The Dance in subsequent NBA 2K games, such as the Ride the Wave
26   dance move available in NBA 2K18.  This dance was immediately
27   recognized by players and media worldwide as The Dance.  Defendants
28   did not credit Ribeiro nor seek his consent to use, display, reproduce,

sell, or create a derivative work based upon Ribeiro's Dance or likeness in 2K16 or subsequent NBA 2K games.

4.     Defendants' NBA 2K franchise is the most popular sports video game franchise in the world.  Indeed, 2K16 was one of the highest selling games of 2015, selling over four million units worldwide within the first week of release.  2K16 was also Take Two's highest selling sports game ever when it was first released.  In addition to profits obtained from selling 2K16 – the game retails for $59.99 at release for the base edition and $79.99 for the Michael Jordan special edition – Defendants also profit from in-game purchases within 2K16. Defendants should not be able to profit from Ribeiro's fame, hard work and creativity by its intentional misappropriation of Ribeiro's original content, likeness, name and trademark.  Ribeiro seeks injunctive relief and damages, including, but not limited to, Defendants' profits attributed to its improper use of The Dance and Ribeiro's likeness.

## II.  THE PARTIES

5.     Ribeiro resides in Los Angeles, California.

6.     Take-Two Interactive Software, Inc. is a Delaware corporation with its principal place of business at 110 West 44th Street, New York, NY 10036.

7.     2K Sports, Inc. is a Delaware corporation with its principal place of business at 10 Hamilton Landing, Novato, CA 94949.  2K Sports is a subsidiary corporation of Take-Two.

8.     2K Games, Inc. is a Delaware corporation with its principal place of business at 10 Hamilton Landing, Novato, CA 94949.   2K Games is a subsidiary corporation of Take-Two.

9.     Visual Concepts Entertainment is a California corporation with its principal place of business at 10 Hamilton Landing, Novato, CA

1   94949.   Visual Concepts is a subsidiary corporation of 2K Games.

2   Alongside 2K Games, Visual Concepts is the creator and developer of

3   the NBA 2K franchise, which was first released in 1999.

4       10.   The true names and identities of the defendants herein sued

5   as Does 1 through 50, inclusive, are unknown to Ribeiro, who therefore

6   sues those defendants by such fictitious names.  When the true names

7   of those defendants have been ascertained, Ribeiro will amend this

8   complaint accordingly.  Each of the defendants aided and abetted and

9   is responsible in some manner for the occurrences herein alleged, and

10   Ribeiro's injuries were proximately caused thereby.  Defendants Take-

11   Two, 2K, Visual Concepts and Does 1 through 50, inclusive, shall

12   collectively be referred to as "Defendants."

13       11.   At all times herein mentioned, each of the defendants was

14   acting as an agent, servant, employee or representative of defendants,

15   and, in doing the things alleged in this Complaint, was acting within

16   the course and scope of that agency, service, employment, or joint

17   venture.

## III. SUBJECT MATTER JURISDICTION AND VENUE

20       12.   The Court has subject matter jurisdiction over this action

21   pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367

22   (supplemental jurisdiction).

23       13.   Venue is proper in this District under A) 28 U.S.C. §

24   1391(b)(2) (federal question jurisdiction), because a substantial part of

25   the events or omissions giving rise to the claims occurred in this

26   District; and B) 28 U.S.C. §§ 1391(b)(1) and (c) (personal jurisdiction),

27   because all Defendants are subject to personal jurisdiction in this State

28   and at least one in this District.

# IV. FACTUAL BACKGROUND

## A.   Ribeiro and the Creation of The Dance

14.   Raised in the New York City borough of the Bronx, Ribeiro has been acting since the age of eight, gaining notoriety and prominence in particular for his dancing. Ribeiro starred in the Broadway musical *The Tap Dance Kid* in 1983, released a single called *Alfonso Ribeiro – Dance Baby* in 1984, appeared as a dancer in a Pepsi commercial with Michael Jackson in 1984, and authored a dance instruction book in 1985 called *Alfonso's Breakin' & Poppin' Book*.

15.   In 1991, Ribeiro created The Dance and first performed it on *The Fresh Prince of Bel-Air* during the episode *Will's Christmas Show*. Twenty-seven years later, The Dance remains distinctive, immediately recognizable, and inextricably linked to Ribeiro's identity, celebrity, and likeness.

16.   Since its conception in 1991, The Dance has maintained its popularity. Ribeiro continues to perform The Dance, even inserting it during his famous performance in 2014 as part of his victorious run on the hit television show *Dancing with the Stars*. Ribeiro is constantly inundated with requests to perform The Dance; he has performed it on numerous occasions at the behest of both the public[1] and celebrities. Indeed, in 2016, the recording artist Justin Timberlake and NBA

---

[1] BlackAmericaWeb.com, *Alfonso Ribeiro: "Please Stop Asking Me To Dance"*, https://blackamericaweb.com/2013/08/13/alfonso-ribeiro-please-stop-asking-me-to-dance/ (quoting Ribeiro as stating "[P]eople walk up to me and they say 'Do the dance'").

**Complaint**

1  superstar Stephen Curry, performed The Dance, alongside Ribeiro, at
2  the popular American Century Celebrity Golf Tournament.[2]

3      17.   A 2013 video by the BBC including Will Smith and his son
4  Jaden Smith, Jeffrey Allen Townes (DJ Jazzy Jeff), and Ribeiro
5  performing The Dance has garnered over sixty-nine million views on
6  YouTube.[3]

7      18.   The Dance has become synonymous with Ribeiro, who is
8  unanimously credited with creating The Dance. Ribeiro has also been
9  interviewed several times about the creation of The Dance and how to
10 properly perform it. Accordingly, The Dance is a part of Ribeiro's
11 identity and The Dance's unique movements readily evoke a connection
12 to Ribeiro.

13     **B.**   **The NBA 2K Franchise and the Rise of**
14          **Microtransactions**

15     19.   The NBA 2K franchise is an annual series of basketball
16 video games modeled after the National Basketball Association
17 ("NBA"). The NBA 2K series consists of 18 annual installments and
18 four spinoff games. Visual Concepts has been the developer of each of
19 the games since inception; Sega Games Company, Limited was the
20 publisher of the first six games before selling Visual Concepts to Take-
21 Two, who later created the 2K Sports and 2K Games subsidiaries.
22 Take-Two, 2K Sports, 2K Games, and Visual Concepts have been the
23 creators and publishers of the franchise since NBA 2K6, released in
24 2005.

25

26 [2] NBC Sports, *Stephen Curry and Justin Timberlake are Shown by Alfonso Ribeiro how to Properly do "the Carlton" That Ribeiro made famous on "The Fresh Prince of Bel-Air*," NBC, https://www.nbcsports.com/video/alfonso-ribeiro-justin-timberlake-stephen-curry-do-carlton.
27

28 [3] The video can be found at https://www.youtube.com/watch?v=ZwS14TiO7Pk.

**Complaint**

20.    Although significantly more complex now, the original "NBA 2K" video game was comparatively simple.   The game, released on November 10, 1999 for the Dreamcast console, featured teams from the 1999-2000 NBA season.   Players could play as any of those teams, or players from those teams, in head-to-head matchups against another player or a computer program.   Players could also create their own players and teams.   The game did not have online capability, nor did it offer in-game purchases.

21.    The two subsequent video games, "NBA 2K1" and "NBA 2K2," were largely similar to the first iteration.   The fourth installment, ESPN NBA Basketball – the only game in the series not to feature "2K" in the title – was the first game to introduce a career mode where players can create their own character and play as that character in various game modes.   The game was also the first in the series to feature online game modes.

22.    NBA 2K10, released in October 2009, advanced the series' career mode feature.   Then called MyPlayer, the career mode feature allowed players to create a personalized character by customizing the character's physical and personal traits, including, position, play style, jersey number, name, age, body type, hair, facial features, and tattoos. The feature also allows users to "spend" skill points earned during MyPlayer games to further improve the character's skills.

23.    NBA 2K14, released in October 2013, was the first installment to introduce microtransactions to the MyPlayer mode, which was renamed MyCareer.   In addition to earning currency through gameplay, the game began allowing players to purchase "Virtual Currency" or "VC" with real money.   For example, in NBA 2K18, Defendants offered five pricing levels for purchasing Virtual Currency:

1           1) 15,000 VC for $4.99;

2           2) 35,000 VC for $9.99;

3           3) 75,000 VC for $19.99;

4           4) 200,000 VC for $49.99; or

5           5) 450,000 VC for $99.99.

6      24.    VC can be spent on MyCareer attributes, uniforms, apparel, signature movements and dances.

8      25.    Although controversial, as purchasers already spent the retail cost of around $60 to purchase 2K games, the in-game microtransactions became a lucrative source of revenue for Defendants. As a result, Defendants began offering more options through microtransactions in subsequent installments, including dances. The more complicated the dance, the more it costs to purchase.

14     26.    In NBA 2K16, released on September 29, 2015, Defendants exploited African-American talent and creativity by copying their dances and movements and selling them through microtransactions. Defendants copied the dances and movements of numerous African-American performers, including, among others, Ribeiro's The Dance from *The Fresh Prince of Bel-Air* television show (named "So Fresh" in game), the "Whip" dance created by the Atlanta hip hop group, "We Are Toonz," in 2013 (also named "Whip" in game), the "Cat Daddy" dance created by the hip hop group, "The Rej3ctz," in 2010 (named "Cat Daddy" and "Rollin" in game), the "Thriller Dance" created by Michael Jackson in his "Thriller" music video in 1982 (named "Spiller" in game), the "Soulja Boy" dance created by the hip hop artist, "Soulja Boy," in 2007 (named "Soul Jah Boi" in game), the "Nae Nae" dance created by "We Are Toonz," in 2013 (also named "Nae Nae" in game), and the

28

1  "Schmoney Dance" created by the hip hop artist, Bobby Shmurda, in

2  2014 (named "Dip" in game).

3      27.  Upon  information  and  belief,  although  Defendants

4  presumably obtained licenses from athletes to use their likenesses and

5  voices, Defendants did not seek consent or authorization from these

6  artists to use any of these movements or dances.  Defendants also did

7  not obtain consent to use the names of the dances that these artists

8  created.

9      28.  Upon news of the inclusion of dance moves in NBA 2K16,

10  multiple media publications highlighted The Dance as the preeminent

11  dance move included in the package of dance moves offered in the game,

12  providing free publicity to the NBA 2K franchise at Ribeiro's expense.

13      29.  Dances,  or  emotes,  are  incredibly  popular  and  provide

14  significant additional revenue to the NBA 2K franchise.  Indeed, in

15  2K14, when Defendants first introduced VC, user spending increased

16  by  about  150%  compared  to  NBA 2K13  with  spending  on  Virtual

17  Currency  making  up  92%  of  the  increase.  Using  Virtual  Currency,

18  players  purchase  dances,  alongside  clothing,  to  personalize  their

19  gaming  experience.  Moreover,  players  routinely  purchase  Virtual

20  Currency  to  avoid  the  tedious  process  of  earning  Virtual  Currency

21  through gameplay.  Indeed, in NBA 2K18, players are given only 6,000

22  VC to start, and players earn less than 500 VC for each game played on

23  MyCareer.  As  dances  routinely  cost  over  1,000  VC,  Defendants

24  intentionally offer considerably low amounts of VC through gameplay

25  in order to incentivize players to purchase VC instead.  In NBA 2K16,

26  the dance "So Fresh" cost 1,000 VC to unlock.

27      30.  Upon information and belief, Defendants will likely continue

28  adding popular dances/emotes to the 2K games without the artists' or

creators' consent or approval to attract more players and add to its ever-growing revenue.

## C. Unauthorized Use of The Dance in NBA 2K16 and Subsequent NBA 2K Games

31. On September 29, 2015, Defendants released NBA 2K16 on the Microsoft Windows, iOS, Android, PlayStation 4, PlayStation 3, Xbox One and Xbox 360 platforms. Defendants priced the regular game at $59.99, and the Michael Jordan special edition at $79.99. Players must unlock The Dance through gameplay and then spend 1000 VC.

32. Moreover, on September 7, 2018, Defendants released NBA 2K19 for all platforms.

33. If purchased, the 2K MyCareer avatar can perform The Dance during gameplay. Defendants did not seek to obtain Ribeiro's authorization or consent for The Dance. Moreover, Ribeiro did not give Defendants express or implied consent for its use of his likeness and The Dance. Defendants also did not compensate Ribeiro.

34. Upon information and belief, Defendants added The Dance to its NBA 2K franchise to intentionally exploit the popularity of Ribeiro and Ribeiro's Dance without providing Ribeiro any form of compensation.

35. Defendants profited from its improper misappropriation of The Dance and Ribeiro's likeness by, *inter alia*: 1) selling the infringing emotes directly to players; 2) selling at least NBA 2K16 and possibly subsequent NBA 2K games that contain The Dance emotes; 3) advertising The Dance emotes to attract additional players, including Ribeiro's fans or those persons familiar with The Dance to play NBA 2K16 and subsequent NBA 2K games and make in-game purchases; 4) keeping the franchise relevant to its players to incentivize those players

1  to continue purchasing the 2K games; 5) impliedly representing that
2  Ribeiro consented to Defendants' use of his likeness; 6) erroneously
3  causing the association of NBA 2K16 and subsequent NBA 2K games
4  with The Dance; 7) creating the false impression that Ribeiro endorsed
5  NBA 2K16 and subsequent NBA 2K games; and 8) inducing and/or
6  contributing to NBA 2K16 and subsequent NBA 2K games characters
7  players' characters performing The Dance.

8      36.   Upon information and belief, Defendants actively and
9  knowingly directed, caused, induced, and encouraged others, including,
10  but not limited to, their players, designers, suppliers, distributors,
11  resellers, software developers, and repair providers, to misappropriate
12  Ribeiro's likeness and The Dance.

13      37.   By adding microtransactions to their popular 2K franchise,
14  Defendants have substantially increased their profits from unlawfully
15  and unfairly misappropriating Ribeiro's and other artists' creative
16  expression, likenesses and trademarks without crediting or
17  compensating these artists.   Ribeiro thus bring this lawsuit to prevent
18  Defendants from further using his likeness and The Dance, and to
19  recover the profits rightfully owed to him.

20                    **FIRST CAUSE OF ACTION**
21  **(For Direct Infringement of Copyright Against All Defendants)**

22      38.   Ribeiro hereby repeats and realleges the allegations set
23  forth in paragraphs 1 through 37, above, as though fully set forth
24  herein.

25      39.   In 1991, Ribeiro created The Dance and first performed it on
26  *The Fresh Prince of Bel-Air* during the episode *Will's Christmas Show.*
27  On or around August 15, 2006, the segment of The Fresh Prince of Bel-
28  Air during which Ribeiro performs The Dance was published to

1   YouTube where it can be accessed by millions of people.  The video

2   shows Ribeiro, as Carlton Banks, performing The Dance to the tune of

3   Tom Jones "It's Not Unusual."

4      40.   Ribeiro is the undisputed creator of the wildly popular and

5   immediately recognizable Dance.  YouTube video's depicting Ribeiro's

6   performance in *The Fresh Prince of Bel-Air* are the original depictions

7   of The Dance.

8      41.   Ribeiro is in the process of registering The Dance with the

9   United States Copyright Office.  On December 15, 2018, Ribeiro

10   submitted   applications   for   copyright   registrations   and   assigned

11   Copyright Office case numbers 1-7226013364, 1-7226013290, and 1-

12   7225814191.

13      42.   In NBA 2K16 and possibly subsequent games, players can

14   have their characters perform the dance within the game.  In fact, a .gif

15   was  released  by  the  NBA  2K  franchise  that  shows  a  side  by  side

16   comparison of "So Fresh" and The Dance to show the exact similarities

17   between the in-game dance and Ribeiro's creation.  Defendants have

18   infringed and continue to infringe Ribeiro's copyrights in The Dance by

19   offering The Dance emotes that, if purchased, a player can use to make

20   his or her avatar perform during 2K gameplay; substantially copying

21   The Dance in digital form to the 2K games; advertising The Dance in

22   its  promotional  materials;  and  creating  the  So  Fresh  emotes  as

23   derivative works of The Dance.

24      43.   Defendants did not seek to obtain Ribeiro's permission for

25   its use of The Dance.  Nor have Defendants compensated or credited

26   Ribeiro for their use of The Dance.

27      44.   Moreover, Defendants actively and knowingly directed,

28   caused, induced, and encouraged others, including, but not limited to,

its players, designers, suppliers, distributors, resellers, software developers, and repair providers, to misappropriate Ribeiro's likeness and The Dance.

45. Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and with indifference to Plaintiff's rights.

46. Defendants' conduct caused and will continue to cause confusion and mistake by leading the public to erroneously believe that Ribeiro consented to the use of his likeness NBA 2K16 and subsequent NBA 2K games in violation of 17 U.S.C. §§ 101 et seq.

47. As a result of Defendants' conduct, Ribeiro has been damaged by being precluded from receiving his rightful share of the profits earned by Defendants for their improper and unlicensed use of Ribeiro's exclusive copyrights in The Dance emote.

48. Ribeiro is entitled to permanent injunctive relief preventing Defendants, and their officers, agents, and employees, and all related persons from further using The Dance and engaging in other acts in violation of Copyright law.

49. Ribeiro is also entitled to recover damages, including any profits obtained by Defendants as a result of the infringements alleged above, in an amount according to proof to be determined at the time of trial.

50. In doing the acts herein alleged, Defendants acted fraudulently, willfully, and with malice, and Ribeiro is therefore entitled to punitive damages according to proof at the time of trial.

1

## SECOND CAUSE OF ACTION

**(For Contributory Infringement of Copyright Against All Defendants)**

51.   Ribeiro hereby repeats and realleges the allegations set forth in paragraphs 1 through 50, above, as though fully set forth herein.

52.   In at least NBA 2K16 and possibly in subsequent games, players can have their characters perform the dance within the game. Defendants have infringed and continue to infringe Ribeiro's copyrights in The Dance by offering the So Fresh emote that, if purchased, a player can use to make his or her avatar perform The Dance during 2K gameplay; substantially copying The Dance in digital form to the 2K games; advertising The Dance in its promotional materials; and creating the So Fresh emotes as derivative works of The Dance.

53.   By providing the So Fresh emotes necessary for its players to commit direct copyright infringement, Defendants have and continue to materially contribute to the unauthorized reproductions and distributions by its players of The Dance.

54.   Defendants did not seek to obtain Ribeiro's permission for its use of The Dance for the So Fresh emotes.  Nor have Defendants compensated or credited Ribeiro for their use of The Dance.

55.   Moreover, Defendants actively and knowingly directed, caused, induced, and encouraged others, including, but not limited to, its players, designers, suppliers, distributors, resellers, software developers, and repair providers, to misappropriate Ribeiro's likeness and The Dance.

56.    Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and with indifference to Plaintiff's rights.

57.    Defendants' willful and continued unauthorized use of The Dance has caused and will continue to cause confusion and mistake by leading the public to erroneously associate The Dance with NBA 2K16 and subsequent NBA 2K games in violation of 17 U.S.C. §§ 101 et seq.

58.    As a result of Defendants' conduct, Ribeiro has been damaged by being precluded from receiving his rightful share of the profits earned by Defendants for their improper and unlicensed use of Ribeiro's exclusive copyrights in The Dance.

59.    Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot be compensated or measured in money. Plaintiff has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to injunctive relief, prohibiting further contributory infringements of Plaintiff's copyrights.

60.    As a direct and proximate result of Defendants' infringement of Plaintiff's copyrights and exclusive rights under copyright, Ribeiro is also entitled to recover damages, including attorneys' fees, and any profits obtained by Defendants as a result of the infringements alleged above, in an amount according to proof to be determined at the time of trial.

61.    In doing the acts herein alleged, Defendants acted fraudulently, willfully, and with malice, and Ribeiro is therefore entitled to punitive damages according to proof at the time of trial.

**Complaint**

## THIRD CAUSE OF ACTION

## (For Violation of the Right of Publicity Under California
## Common Law Against All Defendants)

62.   Ribeiro hereby repeats and realleges the allegations set forth in paragraphs 1 through 61, above, as though fully set forth herein.

63.   Through their use of The Dance as in-game dance emotes, Defendants misappropriated Ribeiro's identity.  In at least NBA 2K16 and possibly in subsequent NBA 2K games, players can have their characters perform the dance within the game.

64.   Defendants did not seek or obtain Ribeiro's authorization or consent for its use of his likeness for the So Fresh emotes.  Nor have Defendants compensated or credited Ribeiro for their use of The Dance.

65.   Defendants used Ribeiro's likeness to generate significant wealth by:  1) selling the infringing emotes directly to players; 2) selling at least NBA 2K16 and possibly subsequent NBA 2K games that contain The Dance emotes; 3) advertising The Dance emotes to attract additional players, including Ribeiro's fans or those persons familiar with The Dance to play NBA 2K16 and subsequent NBA 2K games and make in-game purchases; 4) keeping the franchise relevant to its players to incentivize those players to continue purchasing the 2K games; 5) impliedly representing that Ribeiro consented to Defendants' use of his likeness; 6) erroneously causing the association of NBA 2K16 and subsequent NBA 2K games with The Dance; 7) creating the false impression that Ribeiro endorsed NBA 2K16 and subsequent NBA 2K games; and 8) inducing and/or contributing to NBA 2K16 and subsequent NBA 2K games characters players' characters performing The Dance.

66.   As a performance artist, Ribeiro exploits his identity by performing at shows, events, and in the media.  Ribeiro was damaged by Defendants' conduct as he was prevented from reaping the profits of licensing his likeness to Defendants.

67.   Defendants' conduct caused and will continue to cause confusion and mistake by leading the public to erroneously believe that Ribeiro consented to the use of his likeness in NBA 2K16 and subsequent NBA 2K games.

68.   Ribeiro is entitled to permanent injunctive relief preventing Defendants, and their officers, agents, and employees, and all related persons from further using his likeness.

69.   Ribeiro is also entitled to recover damages, including any profits obtained by Defendants as a result of the infringements alleged above, in an amount according to proof to be determined at the time of trial.

## FOURTH CAUSE OF ACTION

## (For Violation of the Right of Publicity Under Cal. Civ. Code § 3344 Against All Defendants)

70.   Ribeiro hereby repeats and realleges the allegations set forth in paragraphs 1 through 69, above, as though fully set forth herein.

71.   Through their use of The Dance as in-game dance emotes, Defendants misappropriated Ribeiro's identity.  In at least NBA 2K16 and possibly in subsequent NBA 2K games, players can have their characters perform The Dance within the game.

72.   Defendants did not seek or obtain Ribeiro's authorization or consent for its use of his likeness for the So Fresh emotes.  Nor have Defendants compensated or credited Ribeiro for their use of The Dance.

1     73.   Defendants used Ribeiro's likeness to generate significant
2   wealth by:  1) selling the infringing emotes directly to players; 2) selling
3   at least NBA 2K16 and possibly subsequent NBA 2K games that
4   contain The Dance emotes; 3) advertising The Dance emotes to attract
5   additional players, including Ribeiro's fans or those persons familiar
6   with The Dance to play NBA 2K16 and subsequent NBA 2K games and
7   make in-game purchases; 4) keeping the franchise relevant to its
8   players to incentivize those players to continue purchasing the 2K
9   games; 5) impliedly representing that Ribeiro consented to Defendants'
10  use of his likeness; 6) erroneously causing the association of NBA 2K16
11  and subsequent NBA 2K games with The Dance; 7) creating the false
12  impression that Ribeiro endorsed NBA 2K16 and subsequent NBA 2K
13  games; and 8) inducing and/or contributing to NBA 2K16 and
14  subsequent NBA 2K games characters players' characters performing
15  The Dance.

16    74.   As a performance artist, Ribeiro exploits his identity by
17  performing in shows, events, and in the media.  Ribeiro was damaged
18  by Defendants' conduct as he was prevented from reaping the profits of
19  licensing his likeness to Defendants.

20    75.   Defendants' conduct caused and will continue to cause
21  confusion and mistake by leading the public to erroneously believe that
22  Ribeiro consented to the use of his likeness in NBA 2K16 and
23  subsequent NBA 2K games.

24    76.   Ribeiro is entitled to permanent injunctive relief preventing
25  Defendants, and their officers, agents, and employees, and all related
26  persons from further using his likeness.

27    77.   Ribeiro is also entitled to recover damages, including any
28  profits obtained by Defendants as a result of the infringements alleged

1  above, in an amount according to proof to be determined at the time of
2  trial.

3                    **FIFTH CAUSE OF ACTION**
4        **(Unfair Competition Under Cal. Bus. & Prof. Code § 17200)**

5        78.   Ribeiro hereby repeats and realleges the allegations set
6  forth in paragraphs 1 through 77, above, as though fully set forth
7  herein.

8        79.   By misappropriating The Dance, and Ribeiro's likeness,
9  Defendants have engaged in business acts or practices that constitute
10  unfair competition in violation of Cal. Bus. & Prof. Code. § 17200.

11        80.   As a result of Defendants' violations, Defendants have
12  unjustly enriched themselves by:  1) selling the infringing emotes
13  directly to players; 2) selling at least NBA 2K16 and possibly
14  subsequent NBA 2K games that contain The Dance emotes; 3)
15  advertising The Dance emotes to attract additional players, including
16  Ribeiro's fans or those persons familiar with The Dance to play NBA
17  2K16 and subsequent NBA 2K games and make in-game purchases; 4)
18  keeping the franchise relevant to its players to incentivize those players
19  to continue purchasing the 2K games; 5) impliedly representing that
20  Ribeiro consented to Defendants' use of his likeness; 6) erroneously
21  causing the association of NBA 2K16 and subsequent NBA 2K games
22  with The Dance; 7) creating the false impression that Ribeiro endorsed
23  NBA 2K16 and subsequent NBA 2K games; and 8) inducing and/or
24  contributing to NBA 2K16 and subsequent NBA 2K games characters
25  players' characters performing The Dance.

26        81.   As a result of Defendants' conduct, Ribeiro has been
27  damaged by being precluded from receiving his rightful share of the
28

1  profits from selling or licensing his likeness, copyright, and trademark
2  in The Dance.

3      82.    Moreover, Ribeiro was damaged by Defendants' conduct as
4  he was prevented from reaping the profits of licensing his likeness,
5  copyright and trademark in The Dance to Defendants.

6      83.    Ribeiro is entitled to permanent injunctive relief preventing
7  Defendants, and their officers, agents, and employees, and all related
8  persons from further using his likeness and copyright.

9      84.    Ribeiro is also entitled to recover damages, including any
10  profits obtained by Defendants as a result of the infringements alleged
11  above, in an amount according to proof to be determined at the time of
12  trial.

13                 **SIXTH CAUSE OF ACTION**
14        **(Unfair Competition Under 15 U.S.C. § 1125(a))**

15      85.    Ribeiro hereby repeats and realleges the allegations set
16  forth in paragraphs 1 through 84, above, as though fully set forth
17  herein.

18      86.    Since debuting The Dance, The Dance has exploded in
19  popularity. The Dance has become synonymous with Ribeiro, who is
20  unanimously credited with creating the dance that bears his famous
21  first role of Carlton Banks from *The Fresh Prince of Bel-Air*. Ribeiro
22  has also been interviewed several times about the creation of The Dance
23  and how to properly perform it. Accordingly, The Dance is a part of
24  Ribeiro's identity and the dance's unique movements readily evoke
25  imagery of Ribeiro's famous performances of The Dance.

26      87.    Defendant's copying and relabeling of Ribeiro's The Dance
27  has caused confusion, deception, and mistake by the creation of the false
28  and misleading impression that Defendants were the creators of The

1   Dance or that Ribeiro was somehow affiliated, connected, or associated
2   with Defendants or provided sponsorship or approval to Defendants.

3      88.   Defendants have further misrepresented the nature,
4   characteristics, qualities and origin of The Dance.  Defendants have
5   diluted Ribeiro's signature Dance by inducing others to flood the
6   internet with videos with performances of The Dance without any
7   attribution.

8      89.   As a result of Defendants' conduct, Ribeiro is damaged by
9   Defendants' exploitation of his name and likeness through 1) selling the
10  infringing emotes directly to players; 2) selling at least NBA 2K16 and
11  possibly subsequent NBA 2K games that contain The Dance emotes; 3)
12  advertising The Dance emotes to attract additional players, including
13  Ribeiro's fans or those persons familiar with The Dance to play NBA
14  2K16 and subsequent NBA 2K games and make in-game purchases; 4)
15  keeping the franchise relevant to its players to incentivize those players
16  to continue purchasing the 2K games; 5) impliedly representing that
17  Ribeiro consented to Defendants' use of his likeness; 6) erroneously
18  causing the association of NBA 2K16 and subsequent NBA 2K games
19  with The Dance; 7) creating the false impression that Ribeiro endorsed
20  NBA 2K16 and subsequent NBA 2K games; and 8) inducing and/or
21  contributing to NBA 2K16 and subsequent NBA 2K games characters
22  players' characters performing The Dance.

23     90.   Ribeiro is entitled to permanent injunctive relief preventing
24  Defendants, and their officers, agents, and employees, and all related
25  persons from further using The Dance.

26     91.   Ribeiro is also entitled to recover damages, including
27  attorney's fees, as a result of the infringements alleged above, in an
28  amount according to proof to be determined at the time of trial.

# PRAYER FOR RELIEF

**As to the First Cause of Action:**

1. For an order restraining Defendants from using, selling, or displaying Ribeiro's copyright in NBA 2K16 and subsequent NBA 2K games;

2. For an award of damages according to proof;

3. For punitive and/or exemplary damages;

4. For attorney's fees and costs;

**As to the Second Cause of Action:**

5. For an order restraining Defendants from using, selling, or displaying Ribeiro's copyright in NBA 2K16 and subsequent NBA 2K games;

6. For an award of damages according to proof;

7. For punitive and/or exemplary damages;

8. For attorney's fees and costs;

**As to the Third Cause of Action:**

9. For an order restraining Defendants from using, advertising, promoting, marketing, selling or offering for sale Ribeiro's likeness in NBA 2K16 and subsequent NBA 2K games;

10. For an award of damages according to proof;

**As to the Fourth Cause of Action:**

11. For an order restraining Defendants from using, advertising, promoting, marketing, selling or offering for sale Ribeiro's likeness in NBA 2K16 and subsequent NBA 2K games;

12. For an award of damages according to proof; and

13. For punitive and/or exemplary damages;

1    **As to the Fifth Cause of Action:**

2        14.    For an order restraining Defendants from advertising,

3    promoting, marketing, selling or offering for sale Ribeiro's copyright

4    and likeness in NBA 2K16 and subsequent NBA 2K games;

5        15.    For an award of damages according to proof; and

6    **As to the Sixth Cause of Action:**

7        16.    For an order restraining Defendants from advertising,

8    promoting, marketing, selling or offering for sale Ribeiro's copyright

9    and likeness in NBA 2K16 and subsequent NBA 2K games;

10        17.    For an award of damages according to proof;

11        18.    For punitive and/or exemplary damages;

12        19.    For attorney's fees and costs;

13    **As to All Causes of Action:**

14        20.    For costs of suit; and

15        21.    For such other and further relief as the Court may deem

16    proper.

17    Dated: December 17, 2018            Respectfully Submitted,

18

19                                    **Pierce Bainbridge Beck Price &**
                                       **Hecht LLP**
20

21

22                                    By:  _/s/ Carolynn Kyungwon Beck_
                                       Carolynn Kyungwon Beck
23                                    *Attorneys for Plaintiff*
24                                    *Alfonso Ribeiro*

25

26

27

28

1

## JURY TRIAL

2    Plaintiff Alfonso Ribeiro requests a trial by jury on all issues to

3   which it is entitled a jury.

4

5   Dated: December 17, 2018          Respectfully Submitted,

6                                     **Pierce Bainbridge Beck Price &**
7                                     **Hecht LLP**

8                                     By:  */s/ Carolynn Kyungwon Beck*
9                                     Carolynn Kyungwon Beck

10                                    John M. Pierce (SBN 250443)
11                                    jpierce@piercebainbridge.com
                                      Carolynn Beck (SBN 264703)
12                                    cbeck@piercebainbridge.com
13                                    Daniel Dubin (SBN 313235)
14                                    ddubin@piercebainbridge.com
                                      600 Wilshire Boulevard, Suite 500
15                                    Los Angeles, California 90017-3212
16                                    (213) 262-9333

17                                    David L. Hecht (NY4695961) (*pro*
18                                    *hac vice* admission pending)
                                      dhecht@piercebainbridge.com
19                                    Maxim Price (NY684858) (*pro hac*
20                                    *vice* admission pending)
                                      mprice@piercebainbridge.com
21                                    Yi Wen Wu (NY5294475) (*pro hac*
22                                    *vice* admission pending)
23                                    wwu@piercebainbridge.com
                                      20 West 23rd Street, Fifth Floor
24                                    New York, New York 10010
25                                    (212) 484-9866

26
                                      *Attorneys for Plaintiff*
27                                    *Alfonso Ribeiro*

28

– 23 –
**Complaint**