1  Dale M. Cendali (admitted *pro hac vice*)
   dale.cendali@kirkland.com
2  Joshua L. Simmons (admitted *pro hac vice*)
   joshua.simmons@kirkland.com
3  Shanti Sadtler Conway (admitted *pro hac vice*)
   shanti.conway@kirkland.com
4  Megan L. McKeown (admitted *pro hac vice*)
   megan.mckeown@kirkland.com
5  KIRKLAND & ELLIS LLP
   601 Lexington Avenue
6  New York, New York 10022
   Telephone: (212) 446-4800
7  Facsimile: (212) 446-4900

8  Sharre Lotfollahi (S.B.N. 258913)
   sharre.lotfollahi@kirkland.com
9  KIRKLAND & ELLIS LLP
   333 South Hope Street
10 Los Angeles, CA  90071
   Telephone:  (213) 680-8400
11 Facsimile:  (213) 680-8500

12 *Attorneys for Defendants Take-Two*
   *Interactive Software, Inc.; 2K Sports,*
13 *Inc.; 2K Games, Inc.; and Visual*
   *Concepts Entertainment ("Take-Two")*
14
                   **UNITED STATES DISTRICT COURT**
15
                   **CENTRAL DISTRICT OF CALIFORNIA**
16
                            **WESTERN DIVISION**
17

| | |
|---|---|
| ALFONSO RIBEIRO, | CASE NO. 2:18-cv-10417 RGK (ASx) |
| Plaintiff, | The Honorable R. Gary Klausner |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND SPECIAL MOTION TO STRIKE (ANTI-SLAPP) PLAINTIFF'S COMPLAINT** |
| TAKE-TWO INTERACTIVE SOFTWARE, INC.; 2K SPORTS, INC.; 2K GAMES, INC.; VISUAL CONCEPTS ENTERTAINMENT; and Does 1 through 50, | |
| Defendants. | Complaint Filed:  December 17, 2018 |
| | Hearing Date:   March 18, 2019<br>Time:                 9:00 a.m.<br>Courtroom:      850, 255 East Temple St. |

## TABLE OF CONTENTS

I.    **STATEMENT OF ALLEGED FACTS**.................................................4

II.    **LEGAL STANDARDS**.................................................................4

III.   **ARGUMENT** ..............................................................................6

     A.    **Plaintiff Cannot State Direct or Contributory Copyright Claims**.....................................................................6

          1.    Plaintiff's Movements Are Not Protected by Copyright.......7

          2.    Plaintiff's Movements Are Mere Ideas...............................12

          3.    The Works Are Not Substantially Similar..........................13

     B.    **Plaintiff's Remaining Claims Are Preempted by the Copyright Act**.......................................................................15

     C.    **Plaintiff's Right of Publicity Claims Violate the First Amendment**.........................................................16

     D.    ***Rogers v. Grimaldi* Principles Bar the Unfair Competition Claims**...................................................................18

     E.    **Plaintiff Is Not Entitled to the Relief Requested in the Complaint**.........................................................20

IV.   **CONCLUSION** ..........................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aaron Basha Corp. v. Felix B. Vollman, Inc.*,
  88 F. Supp. 2d 226 (S.D.N.Y. 2000) ........................................................ 10

*Abbywho, Inc. v. Interscope Records*,
  No. 06 Civ. 0672, 2008 WL 11406099 (C.D. Cal. Jan. 7, 2008) ........................... 20

*Apple Comput., Inc. v. Microsoft Corp.*,
  35 F.3d 1435 (9th Cir. 1994) ................................................................ 14

*Arenas v. Shed Media U.S. Inc.*,
  881 F. Supp. 2d 1181 (C.D. Cal. 2011) .......................................... 6, 17, 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................... 5

*Baez v. Pension Consulting Alliance, Inc.*,
  No. 2:17 Civ. 01938, 2017 WL 9500979 (C.D. Cal. July 20, 2017) ..................... 6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................... 5

*Bibbero Sys., Inc. v. Colwell Sys., Inc.*,
  893 F.2d 1104 (9th Cir. 1990) .............................................................. 9

*Bikram's Yoga Coll. of India, L.P. v. Evolation Yoga, LLC*,
  803 F.3d 1032 (9th Cir. 2015) ......................................................... 12, 13

*Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*,
  No. 2:11 Civ. 5506, 2012 WL 6548505 (C.D. Cal. Dec. 14, 2012) ...................... 12

*Blehm v. Jacobs*,
  702 F.3d 1193 (10th Cir. 2012) ............................................................ 13

*Boost Beauty, LLC v. Woo Signatures, LLC*,
  No. 2:18 Civ. 02960, 2018 WL 5099258 (C.D. Cal. Oct. 15, 2018) ...................... 7

*Brown v. Elec. Arts, Inc.*,
  724 F.3d 1235 (9th Cir. 2013) ............................................................. 19

*Brown v. Entm't Merchants Ass'n*,
  131 S. Ct. 2729 (2011)..........................................................................6, 20

*Cabell v. Sony Pictures Entm't, Inc.*,
  425 F. App'x 42 (2d Cir. 2011) ...................................................................13

*Century Tile, Inc. v. Hirsch Glass Co.*,
  467 F. App'x 651 (9th Cir. 2012)................................................................15

*Chey v. Pure Flix Entm't LLC*,
  No. 16 Civ. 164362, 2017 WL 5479640 (C.D. Cal. Feb. 10, 2017) .........................9

*Choyce v. SF Bay Area Indep. Media Ctr.*,
  No. 13 Civ. 01842, 2014 WL 2451122 (N.D. Cal. June 2, 2014)............................7

*Christianson v. West Pub. Co.*,
  149 F.2d 202 (9th Cir. 1945) ...............................................................8, 14

*CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*,
  97 F.3d 1504 (1st Cir. 1996)..............................................................10, 12

*Cusano v. Klein*,
  473 F. App'x 803 (9th Cir. 2012)..........................................................6, 15

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003).......................................................................................16

*DBC of N.Y., Inc. v. Merit Diamond Corp.*,
  768 F. Supp. 414 (S.D.N.Y. 1991) ............................................................10

*de Havilland v. FX Networks, LLC*,
  21 Cal. App. 5th 845 (Ct. App. 2018) ...................................................6, 18

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
  528 F.3d 696 (9th Cir. 2008) ....................................................................20

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*,
  547 F.3d 1095 (9th Cir. 2008)........................................................6, 18, 19

*Entous v. Viacom Int'l, Inc.*,
  151 F. Supp. 2d 1150 (C.D. Cal. 2001) ....................................................16

*Express, LLC v. Forever 21, Inc.*,
  No. 09 Civ. 4514, 2010 WL 3489308 (C.D. Cal. Sept. 2, 2010) ..............................9

*Feist Pubs., Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ............................................................................... 7

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*,
    654 F.3d 958 (9th Cir. 2011) ................................................................ 7

*Folkens v. Wyland Worldwide, LLC*,
    882 F.3d 768 (9th Cir. 2018) .............................................................. 13

*Garcia v. Google, Inc.*,
    786 F.3d 733 (9th Cir. 2015) ......................................................... 7, 12

*Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*,
    742 F.3d 414 (9th Cir. 2014) ........................................................... 6, 7

*Hall v. Swift*,
    No. 17 Civ. 6882, 2018 WL 2317548 (C.D. Cal. Feb. 13, 2018) ...... 6, 14

*Horgan v. Macmillan, Inc.*,
    789 F.2d 157 (2d Cir. 1986) ......................................................... 10, 11

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*,
    755 F.3d 1038 (9th Cir. 2014) ............................................................ 12

*Int'l Biotical Corp. v. Associated Mills, Inc.*,
    239 F. Supp. 511 (N.D. Ill. 1964) ...................................................... 13

*Kates v. Crocker Nat. Bank*,
    776 F.2d 1396 (9th Cir. 1985) ............................................................ 20

*Kirby v. Sega of Am., Inc.*,
    144 Cal. App. 4th 47 (2006) ......................................................... 17, 18

*Laws v. Sony Music Entm't, Inc.*,
    448 F.3d 1134 (9th Cir. 2006) ....................................................... 15, 16

*Lesley v. Spike TV*,
    241 F. App'x 357 (9th Cir. 2007) ......................................................... 7

*Lewis v. Activision Blizzard, Inc.*,
    634 F. App'x 182 (9th Cir. 2015) ....................................................... 16

*Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co.*,
    170 F. Supp. 3d 1249 (C.D. Cal. 2016) ......................................... 15, 16

*Lorenzana v. S. Am. Rests. Corp.*,
  799 F.3d 31 (1st Cir. 2015)...................................................................... 10

*Maloney v. T3Media, Inc.*,
  853 F.3d 1004 (9th Cir. 2017) ..........................................................6, 16

*Marcus v. ABC Signature Studios, Inc.*,
  279 F. Supp. 3d 1056 (C.D. Cal. 2017)................................................ 16

*Masterson Mktg., Inc. v. KSL Recreation Corp.*,
  495 F. Supp. 2d 1044 (S.D. Cal. 2007) ................................................ 15

*Mattel, Inc. v. Azrak-Hamway Int'l, Inc.*,
  724 F.2d 357 (2d Cir. 1983) .................................................................. 13

*Metrano v. Twentieth Century Fox Film Corp.*,
  No. 08 Civ. 086314, 2009 WL 10672576 (C.D. Cal. July 16, 2009)..................... 20

*Naruto v. Slater*,
  No. 15 Civ. 04324, 2016 WL 362231 (N.D. Cal. Jan. 28, 2016)........................ 12

*Novalogic, Inc. v. Activision Blizzard*,
  41 F. Supp. 3d 885 (C.D. Cal. 2013) ...............................................18, 19

*Oskar Sys., LLC v. Club Speed, Inc.*,
  745 F. Supp. 2d 1155 (C.D. Cal. 2010) ................................................ 15

*Reece v. Island Treasures Art Gallery, Inc.*,
  468 F. Supp. 2d 1197 (D. Haw. 2006)..................................................... 13

*Rentmeester v. Nike, Inc.*,
  883 F.3d 1111 (9th Cir. 2018) ...........................................................8, 13

*Richtek Tech. Corp. v. UPI Semiconductor Corp.*,
  No. 09 Civ. 05659, 2011 WL 166292 (N.D. Cal. Jan. 19, 2011)........................... 5

*Rogers v. Grimaldi*,
  875 F.2d 994 (2d Cir. 1989) ...........................................................3, 18

*Roxbury Entm't v. Penthouse Media Grp., Inc.*,
  669 F. Supp. 2d 1170 (C.D. Cal. 2009)................................................... 19

*Saregama India Ltd. v. Young*,
  No. 02 Civ. 9856, 2003 WL 25769784 (C.D. Cal. Mar. 11, 2003)........................ 20

*See v. Durang*, 711 F.2d 141, 144 (9th Cir. 1983) ........................................................ 14

*Sivero v. Twentieth Century Fox Film Corp.*,
    No. B266469, 2018 WL 833696 (Cal. Ct. App. Feb. 13, 2018) ...................... 17, 18

*Skinder-Strauss Assocs. v. Mass. Continuing Legal Educ., Inc.*,
    914 F. Supp. 665 (D. Mass. 1995)........................................................................ 10

*Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*,
    845 F.3d 1246 (9th Cir. 2017) ............................................................................. 16

*Solid Oak Sketches, LLC v. 2K Games, Inc.*,
    No. 16 Civ. 724, 2016 WL 4126543 (S.D.N.Y. Aug. 2, 2016)............................. 20

*Southco, Inc. v. Kanebridge Corp.*,
    390 F.3d 276 (3d Cir. 2004) ........................................................................... 10, 12

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008) ............................................................................. 16

*Thomas v. Walt Disney Co.*,
    337 F. App'x 694 (9th Cir. 2009)........................................................................... 8

*VIRAG, S.R.L. v. Sony Comput. Entm't Am. LLC*,
    699 F. App'x 667 (9th Cir. 2017)................................................................... 19, 20

*White v. Twentieth Century Fox Corp.*,
    572 F. App'x 475 (9th Cir. 2014)........................................................................... 8

*Wild v. NBC Universal*,
    513 F. App'x 640 (9th Cir. 2013)........................................................................... 8

*Winter v. DC Comics*,
    30 Cal. 4th 881 (2003) ......................................................................................... 17

*Zekkariyas v. Universal Music-MGB Songs*,
    No. 11 Civ. 2912, 2011 WL 13220325 (C.D. Cal. June 6, 2011)......................... 12

*Zhang v. Heineken N.V.*,
    No. 08 Civ. 06506, 2010 WL 11596643 (C.D. Cal. Sept. 29, 2010) ................. 9, 12

*Zindel v. Fox Searchlight Pictures, Inc.*,
    No. 18 Civ. 1435, 2018 WL 3601842 (C.D. Cal. July 23, 2018)............................ 6

**Statutes**

17 U.S.C. § 102.................................................................10, 12, 13, 15

17 U.S.C. § 301....................................................................................15

17 U.S.C. § 412....................................................................................20

Cal. Civ. Proc. Code § 425.16 .............................................................. 6

**Rules**

Fed. R. Civ. P. 12(b)(6) ...........................................................*passim*

**Other Authorities**

37 C.F.R. § 202.1.......................................................................... 11, 12

H.R. Rep. 94-1476 (1976) .................................................................. 10

Letter from U.S. Copyright Office to Puo-I "Bonnie" Lee (dated July 14,
    2016).......................................................................................... 12

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices
    (3d ed. 2017)..........................................................................9, 10, 11

This lawsuit suffers from a host of issues ranging from a lack of plausible ownership, to a lack of substantial similarity, to preemption by the Copyright Act. Fundamentally, it conflicts with the First Amendment as it attempts to impose liability, and thereby chill creative expression, by claiming rights that Plaintiff does not hold. It should be dismissed. ***First***, Plaintiff admits to creating the alleged "Dance" for the *Fresh Prince of Bel-Air* series, but did not try to register that "Dance" with the Copyright Office—presumably because he knows that he does not own the copyright. The copyright notice for the episode in which it first appeared (as alleged in the Complaint) lists solely "National Broadcasting Company, Inc." Thus, Plaintiff's copyright claims fail as his allegation that the "Dance" was created for an episode owned by NBC means that he has not plausibly alleged ownership of a valid copyright. Indeed, the Copyright Office knows such performances are not owned by the performers. When Plaintiff tried to register Variation A of the alleged dance, the Office raised a similar question because it was a performance of Plaintiff on *Dancing with the Stars*, to which it was implausible that Plaintiff owned the copyright.[1]

***Second***, the movements that are the sole basis for Plaintiff's copyright claims are not protectable. ***Indeed: the Copyright Office already has rejected Plaintiff's two copyright applications (Variations B and C) that only show the movements at issue (rather than additional content) because each is "a simple dance routine" that "is not registrable as a choreographic work."*** Cendali Decl. Exs. M, N. This is because individual dance steps and simple dance routines made up of multiple steps are building blocks of free expression, and they are not copyrightable. Rather, they are free for all to use, perform, and enjoy. Yet, contrary to the Copyright Office's decision, Plaintiff seeks to monopolize simple movements by arguing that Take-Two's basketball video game, *NBA 2K*, infringes his rights because of its So Fresh celebratory dance (one of many tiny customizations that the in-game basketball

---

[1]   Declaration of Dale M. Cendali, dated Feb. 13, 2019, ("Cendali Decl.") Ex. L. To Take-Two's knowledge, the Office has not taken action on the application for Variation A because it is waiting for a response from Plaintiff as to his ownership.

players may perform).  Plaintiff does not claim that *NBA 2K*'s players resemble him or that any other parts of the game infringe his rights.

Importantly, none of the "Variations" are substantially similar to *NBA 2K*. When comparing two works, courts filter out unprotectable elements, and then compare any protectable ones that remain.  As an initial matter, any material that Plaintiff does own must be filtered out.  Thus, as it is not plausible that he owns the "Dance," which admittedly premiered on *Fresh Prince*, the "Dance" cannot be considered in determining substantial similarity.

Moreover, regardless of ownership, it is well-established that the building blocks of expression—words and short phrases, geometric shapes, colors, and dance steps and simple routines—are not copyrightable as protecting them would prevent others from creating new works in contravention of the Constitutional mandate from which copyright springs.  In dance, this is apparent from (a) the legislative history of the Copyright Act, which expressly states that "simple [dance] routines" are not copyrightable; (b) the Copyright Office's regulations, which do not permit individual dance steps or simple routines to be registered (as occurred here); and (c) Ninth Circuit case law holding that such elements are not protectable.  The Copyright Office's refusal to register the dance at issue here reflects this principle.

Further, copyright does not protect mere ideas and concepts, but rather only the expression of those ideas.  The general concept of Plaintiff's alleged dance is just such an unprotectable idea as Ninth Circuit courts have held in similar situations.  As the movements are not protectable as a matter of law, there is nothing to compare to *NBA 2K*, and the works necessarily are not substantially similar.

In addition, even without this filtering, comparing the three "Variations" and *NBA 2K* shows that there is no substantial similarity.  The Variations are (A) Plaintiff performing on *Dancing with the Stars*, (B) Plaintiff appearing on the *Graham Norton Show*, and (C) Plaintiff playing golf at the American Century Celebrity Golf Tournament.  Plaintiff only claims infringement for the short movements at issue.

1  *NBA 2K*, by contrast, is a basketball simulation video game with myriad basketball

2  players, arenas, and movements, none of which Plaintiff has accused of infringement.

3  The works, thus, cannot be substantially similar as a whole.  Further, each variation of

4  the movements at issue is different from Take-Two's So Fresh celebratory dance as

5  the arm and leg movements differ.  The differences are particularly pronounced given

6  how short the movements are.  The works are not substantially similar.[2]

7      ***Third***, Plaintiff's non-copyright claims are unavailing.  Under California's anti-

8  SLAPP statute, when state law claims are asserted against an expressive work like

9  *NBA 2K*, it is ***plaintiff's*** burden to prove a probability of prevailing to avoid chilling

10  the valid exercise of free speech rights.[3]  Plaintiff cannot do so:

11   • All of the non-copyright claims involve the same steps and seek to address the

12      same alleged copying as Plaintiff's copyright claims and, thus, they are

13      preempted by the Copyright Act and should be dismissed for this reason alone.

14   • Plaintiff's right of publicity claims also are barred by the First Amendment

15      under California's Transformative Use test as *NBA 2K* has distinctive and

16      expressive content beyond the alleged use of the steps.

17   • Plaintiff's unfair competition claims similarly are barred by the First

18      Amendment based on *Rogers v. Grimaldi* principles because So Fresh is

19      artistically relevant to *NBA 2K*, and Plaintiff does not point to any expressly

20      misleading conduct by Take-Two beyond its alleged use of the steps.

21      ***Finally***, Plaintiff's overreaching extends to the remedies he seeks: (a) punitive

22  damages are not available on his federal claims; (b) California's unfair competition

23  law only provides for the award of restitution, not general damages; and (c) because

24  Plaintiff applied to register his copyrights only after the alleged infringement

25  commenced, attorney's fees are not available on his copyright claims.

26  ---

[2]   Similarly deficient, Plaintiff asserts that the game in which So Fresh first appeared
27      was released in 2015 and Variation C was created in 2016.  There can be no
      infringement of Variation C as So Fresh ***predates*** it.

28  [3]   The federal unfair competition claim fails for the same reasons as the state claims.

1  Take-Two respectfully requests that the Complaint be dismissed with prejudice
2  as Plaintiff chose not to amend it after being informed of the bases for this Motion.

3  ## I.  STATEMENT OF ALLEGED FACTS

4  Plaintiff alleges that he created a dance in 1991 and "performed it on *The Fresh*
5  *Prince of Bel-Air* during the episode *Will's Christmas Show*."  Compl. ¶ 15.  He did
6  not attempt to register it, likely because he does not own the copyright—the episode
7  has a copyright notice that lists solely "National Broadcasting Company, Inc."
8  Cendali Decl. ¶ 8, Ex. I.  Instead, he sought to register three subsequent "Variations,"
9  *id.* Exs. L–N, two of which the Copyright Office has **refused** to register due to a lack
10  of copyrightability.  Rejected were, Variation B—a clip from the *Graham Norton*
11  *Show*, in which the "Dance" appears 12 seconds into the video for 21 seconds, *id.* Ex.
12  E—and Variation C—a video taken during the American Century Celebrity Golf
13  Tournament, in which the "Dance" is performed for 6 seconds, *id.*  Ex. H.  Variation
14  A is a one-minute, 20-second routine that Plaintiff performed on *Dancing With the*
15  *Stars*, which includes dance movements not claimed to be infringed here.  *Id.*  Ex. B.
16  The "Dance" appears 54 seconds into the video, and is performed for 10 seconds.

17  Plaintiff alleges that So Fresh in *NBA 2K* infringes his rights.  Compl. ¶ 1.  *NBA*
18  *2K* is a basketball simulation video game series, wherein players can explore the
19  game's narrative and play virtual basketball against a variety of opponents.  Cendali
20  Decl. Ex. J.  Within the game and its narratives, users create and customize their
21  fictional player, who competes against real-world players.  During the game, users
22  may unlock and use celebratory dances like So Fresh.  *Id.*[4]

23  ## II.  LEGAL STANDARDS

24  A Complaint "must contain sufficient factual matter, accepted as true, to 'state a
25  claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

26  ─────────────
[4]  Plaintiff references a movement called "Ride the Wave," Compl. ¶ 3, but it is not
27  part of his claims, *id.* ¶¶ 38–91, and Take-Two is unsure of the reference.  Thus,
Plaintiff has not alleged it infringes.  *See Richtek Tech. Corp. v. UPI*
28  *Semiconductor Corp.*, No. 09 Civ. 05659, 2011 WL 166292, at *2–3 (N.D. Cal.
Jan. 19, 2011) (complaint dismissed that failed to identify alleged infringement).

(2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), and plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The Court must disregard allegations that are legal conclusions, even when disguised as facts." *Hall v. Swift*, No. 17 Civ. 6882, 2018 WL 2317548, at *3 (C.D. Cal. Feb. 13, 2018). It, however, may consider works referenced in the Complaint. *See Zindel v. Fox Searchlight Pictures, Inc.*, No. 18 Civ. 1435, 2018 WL 3601842, at *3 (C.D. Cal. July 23, 2018); Req. J. Notice, at 1. Plaintiff cannot plead facts sufficient to support his claims.

Moreover, as to the state law claims, Plaintiff's pleading failures violate California's anti-SLAPP statute, which subjects to a special motion to strike any "cause of action against a person arising from any act of that person in furtherance of the person's right of . . . free speech . . . in connection with a public issue." Cal. Civ. Proc. Code § 425.16(b)(1). Such motions require a two-part analysis, both of which are satisfied here. ***First***, the court determines whether "the challenged cause of action arises from activity protected under the statute." *Baez v. Pension Consulting Alliance, Inc.*, No. 2:17 Civ. 01938, 2017 WL 9500979, at *2 (C.D. Cal. July 20, 2017). "California courts have interpreted this piece of the defendant's threshold showing rather loosely . . . and have held that a court must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis." *Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 422 (9th Cir. 2014) (internal quotation marks omitted). Here, the United States Supreme Court has held that "video games qualify for First Amendment protection," *Brown v. Entm't Merchants Ass'n*, 131 S. Ct. 2729, 2733 (2011),[5] and all of Plaintiff's claims hinge on

---

[5] Creative works, like video games, routinely satisfy step one. *See Cusano v. Klein*, 473 F. App'x 803, 804 (9th Cir. 2012) (first prong satisfied by television programs and video games); *see also E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008) (*Grand Theft Auto: San Andreas* video game protected); *see also Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1009 (9th Cir. 2017) (photographs); *Arenas v. Shed Media U.S. Inc.*, 881 F. Supp. 2d 1181, 1195 (C.D. Cal. 2011), *aff'd*, 462 F. App'x 709 (9th Cir. 2011) (television); *de Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 856 (Ct. App. 2018) (same).

1    *NBA 2K's* inclusion of the "Dance," which Plaintiff touts as being of public interest.

2    *See* Compl. ¶¶ 15–18.  Thus, Plaintiff's claims are based on acts taken in furtherance

3    of Take-Two's free speech rights.  ***Second***, the burden shifts to the plaintiff to

4    "demonstrate[] a probability of prevailing on the merits of its" claims.  *GLAAD*, 742

5    F.3d at 425.  Plaintiff cannot do so.  *See infra* 15–20.

6    **III.   ARGUMENT**

7        **A.    Plaintiff Cannot State Direct or Contributory Copyright Claims**

8            Plaintiff's first and second causes of action assert direct and contributory

9    copyright infringement, respectively.  To state a claim of copyright infringement,

10   Plaintiff must allege "(1) ownership of a valid copyright, and (2) copying of

11   constituent elements of the work that are original."  *Feist Pubs., Inc. v. Rural Tel.*

12   *Serv. Co.*, 499 U.S. 340, 361 (1991).  Moreover, one of the required elements of a

13   contributory copyright infringement claim is an underlying direct infringement claim.

14   *Boost Beauty, LLC v. Woo Signatures, LLC*, No. 2:18 Civ. 02960, 2018 WL 5099258,

15   at *5 (C.D. Cal. Oct. 15, 2018).  Plaintiff cannot satisfy either element.

16           **As to the first element**, the Complaint refers to a single "Dance," Compl. ¶ 1,

17   but Plaintiff cannot plausibly allege ownership of it, which is his "burden."  *See*

18   *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 654 F.3d 958, 962 (9th Cir. 2011); *Choyce*

19   *v. SF Bay Area Indep. Media Ctr.*, No. 13 Civ. 01842, 2014 WL 2451122, *4–5 (N.D.

20   Cal. June 2, 2014) (dismissing with prejudice copyright with no "well-pled factual

21   allegations . . . that Plaintiff himself owns a valid copyright").  He claims to have

22   created the "Dance" in 1991 for *Fresh Prince*, Compl. ¶¶ 2, 39, but the Ninth Circuit

23   has recognized that a show's *producers* own performances of the actors.[6]  *See Garcia*

24   *v. Google, Inc.*, 786 F.3d 733, 743 (9th Cir. 2015) (en banc) ("The reality is that

25   contracts and the work-made-for-hire doctrine govern much of the big-budget

26   Hollywood and production world."); *Lesley v. Spike TV*, 241 F. App'x 357, 358 (9th

27   ───────────────
     [6]   And when Plaintiff tried to register Variation A—which also was performed on a
28   "nationally televised show"—the Copyright Office questioned Plaintiff's
     ownership as it was likely "a work made for hire."  Cendali Decl. Ex. L.

Cir. 2007) (actor's performance owned by producer as "work made for hire"). Likewise, here, the episode in which Plaintiff alleges the Dance first appeared has a copyright notice listing solely "National Broadcasting Company, Inc." Cendali Decl. ¶ 8, Ex. I. Thus, the Complaint does not plausibly allege his ownership.

**As to the second element**, the works are not "substantially similar" under the two-part analysis used by courts in this Circuit—consisting of the "extrinsic test" and the "intrinsic test." The extrinsic test requires courts to "'filter out' the unprotectable elements of the plaintiff's work—primarily ideas and concepts, material in the public domain, and *scènes à faire* (stock or standard features that are commonly associated with the treatment of a given subject)"—and then compare the "protectable elements that remain" to "corresponding elements of the defendant's work to assess similarities in the objective details of the works." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018). "The intrinsic test requires a more holistic, subjective comparison of the works to determine whether they are substantially similar in 'total concept and feel.'" *Id.* A motion to dismiss should be granted where, after comparing the works, the extrinsic test is not satisfied. *Id.* (affirming dismissal where photographs were not substantially similar despite similar subject matter and pose).[7]

Here, Plaintiff conclusorily asserts that "players can have their characters perform the dance within the game." Compl. ¶ 42. Yet, "the works themselves supersede any contrary allegations, conclusions or descriptions of the works contained in the pleadings." *Chey v. Pure Flix Entm't LLC*, No. 16 Civ. 164362, 2017 WL 5479640, at *4 (C.D. Cal. Feb. 10, 2017). Once the unprotectable elements are filtered out, the works are not substantially similar as a matter of law.

### 1.   Plaintiff's Movements Are Not Protected by Copyright

Here, Plaintiff's "Dance" is not protectable and, thus, there is nothing to

---

[7] *See also White v. Twentieth Century Fox Corp.*, 572 F. App'x 475, 477 (9th Cir. 2014); *Wild v. NBC Universal*, 513 F. App'x 640, 642 (9th Cir. 2013); *Thomas v. Walt Disney Co.*, 337 F. App'x 694, 694 (9th Cir. 2009); *Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945).

compare to assess substantial similarity.  ***The Copyright Office already has found that the "Dance" is not copyrightable*** as reflected by its refusal to register Variations B and C (in which the "Dance" is the only alleged choreography).  Cendali Decl. Exs. M, N.[8]  The basis for Copyright Office's decision is clear: the "Dance" "is a simple dance routine" and, as such, "it is not registrable as a choreographic work."  *Id.*

The Copyright Office's determination in this case is consistent with the long-held articulation of copyrightability used by the courts, Congress, and the Copyright Office.  Courts recognize that works have elements that are not protectable as they are building blocks of creative expression that, if protected, would inhibit the creation of new works.  For example, "words and short phrases" are not protectable.  *Zhang v. Heineken N.V.*, No. 08 Civ. 06506, 2010 WL 11596643, at *4 (C.D. Cal. Sept. 29, 2010).  This is because "even if the word or short phrase is novel or distinctive or lends itself to a play on words," it contains "a *de minimis* amount of authorship."  U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 313.4(C) (3d ed. 2017) ("Compendium").  Similarly, "variations of long-established Chinese word characters" were not protectable as doing so would "effectively give [plaintiff] a monopoly on renditions of these five Chinese characters."  *Zhang*, 2010 WL 11596643, at *5 (dismissal on the pleadings).  "[B]lank forms which do not convey information are not copyrightable" as they are where information is recorded, and do not convey information themselves.  *Bibbero Sys., Inc. v. Colwell Sys., Inc.*, 893 F.2d 1104, 1106 (9th Cir. 1990).  And "mere changes in color are generally not subject to copyright protection."  *Express, LLC v. Forever 21, Inc.*, No. 09 Civ. 4514, 2010 WL 3489308, at *6 (C.D. Cal. Sept. 2, 2010).[9]

---

[8]   Variation A's application remains pending as it is part of a longer *Dancing with the Stars* routine, for which the Office questioned Plaintiff's ownership.  *Id.* Ex. L.

[9]   *See also Lorenzana v. S. Am. Rests. Corp.*, 799 F.3d 31, 34 (1st Cir. 2015) (affirming dismissal as recipe instructions and name not protectable); *Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 287 (3d Cir. 2004) ("part numbers" not protectable); *CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1520 (1st Cir. 1996) ("ordinary employment phraseology" not protectable); *Aaron Basha Corp. v. Felix B. Vollman, Inc.*, 88 F. Supp. 2d 226, 230 (S.D.N.Y. 2000)

This principle applies with equal force to the field of dance.  The Copyright Act of 1976's list of works of authorship includes only "choreographic works."  17 U.S.C. § 102(a)(4).  As explained in the Compendium of U.S. Copyright Office Practices—the Office's substantive manual for its staff on the contours of copyright law and Office policies—choreography is the "composition and arrangement of 'a related series of dance movements and patterns organized into a coherent whole.'" Compendium § 805.1 (quoting *Horgan v. Macmillan, Inc.*, 789 F.2d 157, 161 (2d Cir. 1986)).  Thus, the Copyright Office would register a "choreographed music video for a song titled 'Made in the USA'" if the dance "is a complex and intricate work performed by a troupe of professional dancers."  *Id.* § 805.5(A).

In recognition that the constituent parts of a choreographic work must be available for others to use in order to foster continued creativity, Congress was explicit that "simple routines" are neither choreographic works nor copyrightable, H.R. Rep. 94-1476, at 53 (1976), and the Copyright Office's Compendium explains that "[i]ndividual movements or dance steps by themselves are not copyrightable." Compendium § 805.5(A).  Thus, although the "Made in the USA" dance above might be registered as a whole, if "[d]uring the chorus, the dancers form the letters 'U, S, A' with their arms . . . the Office would reject a claim limited to the 'U, S, A' gesture." *Id.*  Other examples of unprotectable movements include "the basic waltz step, the hustle step, the grapevine, or the second position in classical ballet."  *Id.*  Further, the Copyright Office has made clear that "short dance routines consisting of only a few movements or steps with minor linear or spatial variations, *even if the routine is novel or distinctive*," are not protectable.  *Id.* (citing C.F.R. § 202.1(a) (emphasis added)).

This approach makes sense as "[i]ndividual dance steps and short dance

(not protectable to use "decorative features . . . commonly used throughout the jewelry business," such as "precious metals, gemstones, and enamel"); *Skinder-Strauss Assocs. v. Mass. Continuing Legal Educ., Inc.*, 914 F. Supp. 665, 674 (D. Mass. 1995) ("a standard calendar, a list of important holidays, a map of Massachusetts, a national map including time zones, and a date calculation chart" not protectable); *DBC of N.Y., Inc. v. Merit Diamond Corp.*, 768 F. Supp. 414, 416 (S.D.N.Y. 1991) ("Familiar symbols or designs" not protectable).

1   routines are the building blocks of choreographic expression, and allowing copyright

2   protection for these elements would impede rather than foster creative expression."

3   *Id.* (citing *Horgan*, 789 F.2d at 161). Thus, "individual elements of a dance are not

4   copyrightable for the same reason that individual words, numbers, notes, colors, or

5   shapes are not protected by the copyright law." *Id*. As discussed above, courts

6   routinely hold that these types of elements are unprotectable, and will dismiss

7   copyright claims based on them at the pleadings stage. *See supra* 7.

8        In applying this standard, the Copyright Office's Compendium provides the

9   following strikingly on point example of an unprotectable dance: "Butler Beauchamp

10  is a wide receiver for a college football team. Whenever he scores a touchdown,

11  Butler performs a celebratory dance in the endzone." Compendium § 805.5(A). In

12  this example, although the dance is comprised of multiple movements of multiple

13  body parts, it is not protectable because it "merely consists of a *few movements of the*

14  *legs, shoulders, and arms*." *Id.* (emphasis added). Likewise, the Copyright Office

15  refused registration of a dance routine by world-renowned modern dance company

16  Pilobolus titled "Five-Petal Flower," which it described as:

17        On the left-hand side is the silhouette of a woman facing the right side of the

18        screen. On the right-hand side several people quickly tumble onto the stage,

19        forming the silhouette of a five-petal flower with their intertwined bodies.

20        Simultaneously, the silhouette of a giant hand moves from the left to the

21        right side of the screen, and appears to pull at the top of the five-petal

22        flower. The hand then points at the flower formation in a common gesture

23        that means "stay put." The flower formation stays still for the remainder of

24        the video. The hand moves back to the left side of the screen and appears to

25        pluck off the head of the woman, who shrugs her arms and slightly kicks her

26        legs outward as if stunned. Her hands reach for the headless top of her body

27        to feel for the head, and then return to her sides. The giant hand moves over

28        the woman's body and her head reappears; the hand moves again and most

1    of her body disappears underneath the hand.  The woman remains near-
2    motionless before the video abruptly ends.
3    Letter from U.S. Copyright Office to Puo-I "Bonnie" Lee (dated July 14, 2016),
4    *available at* https://www.copyright.gov/rulings-filings/review-board/docs/five-petal-
5    flower.pdf.  Despite the detailed description of Pilobolus' dance, the Copyright Office
6    concluded that the routine was "*de minimis*" because it consisted of "simple
7    movements" that were "insufficient to enable copyright registration."  *Id.* at 4.

8          The Copyright Office's guidance is critical as the Ninth Circuit has held that,
9    "[w]hen interpreting the Copyright Act," courts should "defer to the Copyright
10   Office's interpretations," *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1041
11   (9th Cir. 2014), because of its "body of experience and informed judgment."  *Garcia*,
12   786 F.3d at 742.  For example, the Office has determined that "examples of works not
13   subject to copyright" include "[w]ords and short phrases such as names, titles, and
14   slogans."  Material Not Subject to Copyright, 37 C.F.R. § 202.1(a) (2018).  Courts
15   routinely dismiss cases on the pleadings relying solely on this regulation.  *See*
16   *Zekkariyas v. Universal Music-MGB Songs*, No. 11 Civ. 2912, 2011 WL 13220325, at
17   *2 (C.D. Cal. June 6, 2011) (granting Rule 12(b)(6) motion based solely on
18   regulation); *Zhang*, 2010 WL 11596643, at *5 (quoting regulation for proposition that
19   "'words and short phrases' are not copyrightable"); *see also Southco*, 390 F.3d at 286
20   (same); *CMM*, 97 F.3d at 1520 (same).[10]

21         Consistent with the foregoing, in *Bikram's Yoga College of India, L.P. v.*
22   *Evolation Yoga, LLC*, the court held that a "Sequence of 26 yoga poses" was too
23   simple to qualify as a choreographic work.  No. 2:11 Civ. 5506, 2012 WL 6548505, at
24   *4 (C.D. Cal. Dec. 14, 2012).  On appeal, the Ninth Circuit acknowledged the
25   touchstones of dance copyright discussed above, but focused its analysis on the fact
26   that the yoga poses were uncopyrightable under 17 U.S.C. § 102(b).  *Bikram's Yoga*

---

[10]   *Cf. Naruto v. Slater*, No. 15 Civ. 04324, 2016 WL 362231, at *4 (N.D. Cal. Jan.
28, 2016) (relying on Copyright Office analysis of authorship for copyrightability
of photograph taken by a monkey), *aff'd*, 888 F.3d 418 (9th Cir. 2018).

1  *Coll. of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032, 1043 (9th Cir. 2015).

2         Plaintiff's movements are even simpler, shorter, and less protectable than the 26

3  poses in *Bikram's*, the endzone dance in the Copyright Office's example, and

4  Pilobolus' intricate modern dance piece.  They merely consist of different variations

5  of an arm swing wherein the arms swing side to side while the legs step back and forth

6  to the side, and an arm extension wherein the arms begin bent inwards to the chest and

7  then extend out to the side of the body while stepping back twice on each side.  That is

8  why the Copyright Office refused to register Variations B and C, finding that they

9  consist of "simple routine[s] that [are] not registrable as [] choreographic work[s]."

10  Cendali Decl. Exs. M, N.  To hold otherwise would cause every person who performs

11  these short movements on television, at a wedding, or in any other public place to be

12  susceptible to a copyright infringement claim.

13               2.    Plaintiff's Movements Are Mere Ideas

14         The movements also are unprotectable ideas.  *See* 17 U.S.C. § 102(b);

15  *Bikram's*, 803 F.3d at 1040 (sequence of yoga steps unprotectable under § 102(b)).  In

16  *Rentmeester*, the Ninth Circuit affirmed dismissal due to a lack of substantial

17  similarity, holding that the plaintiff did not own the "general 'idea' or 'concept' . . . of

18  [Michael] Jordan in a leaping, *grand jeté*-inspired" movement.  883 F.3d at 1121; *see*

19  *also Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 774 (9th Cir. 2018) (dolphins'

20  pose unprotectable).  In *Reece v. Island Treasures Art Gallery, Inc.*, the court held that

21  the "idea of a hula dancer performing an 'ike movement in the hula kahiko style from

22  the noho position is not protected."  468 F. Supp. 2d 1197, 1206 (D. Haw. 2006).[11]

23  _____

24  [11]  *See also Blehm v. Jacobs*, 702 F.3d 1193, 1201 (10th Cir. 2012) ("a copyright
     owner has no monopoly over the idea of a muscular doll in a standard pose");
25   *Cabell v. Sony Pictures Entm't, Inc.*, 425 F. App'x 42 (2d Cir. 2011) ("brandishing
     a blow dryer as a weapon" and "fighting poses" were "unprotectable ideas");
26   *Mattel, Inc. v. Azrak-Hamway Int'l, Inc.*, 724 F.2d 357, 360 (2d Cir. 1983)
     ("Though the dolls' bodies are very similar, nearly all of the similarity can be
27   attributed to the fact that both are artist's renderings of the same unprotectable
     idea—a superhuman muscleman crouching in what since Neanderthal times has
28   been a traditional fighting pose."); *Int'l Biotical Corp. v. Associated Mills, Inc.*,
     239 F. Supp. 511, 514 (N.D. Ill. 1964) (various poses were unprotectable ideas).

### 3.   The Works Are Not Substantially Similar

Once "the unprotectable elements have [been] identified" and "filtered," the works are "considered as a whole." *Apple Comput., Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994); *See v. Durang*, 711 F.2d 141, 144 (9th Cir. 1983) (analyzing works "as a whole" to consider similarities "in context"). Here, there are no protectable elements to consider as the movements are not protectable (as the Copyright Office found) and, even if they were, it is not Plaintiff that owns them. *See supra* 6. Without similar elements to compare, dismissal is required. *See Christianson*, 149 F.2d at 204 (affirming dismissal where only similarities between two maps were unoriginal or mere ideas); *Hall*, 2018 WL 2317548, at *8 (granting Rule 12(b)(6) motion where "only thing that Plaintiffs allege Defendants copied" in Taylor Swift's song was "too brief, unoriginal, and uncreative to warrant protection").

Moreover, as the only part of *NBA 2K* that Plaintiff alleges is similar to his movements is So Fresh, he tacitly concedes that the other elements in *NBA 2K* do not infringe his rights—not *NBA 2K's* basketball games, players, settings, themes, or moods. But as noted above, Plaintiff's case is based solely on the simple movements.

Although Plaintiff only refers to the "Dance" in his Complaint, he actually sought to register three specific "Variations" with the Copyright Office, each of which is somewhat different. This only serves to underscore that Plaintiff is seeking to monopolize a broad and chilling swath of movement. But in any case, each of the variations is substantially different from So Fresh:

- Variation A's arm swing features the arms swinging behind the body with a step to the side where the leading leg bends at the knee, and then the feet consistently meet at the heels. *In contrast*, So Fresh's arm swing features the arms swinging to the side of the body with a step to the side where the leading leg straightens while the other leg bends as it comes into the body, and the feet do not consistently meet at the heels, but rather begin far apart and only gradually travel closer as the steps continue. Similarly, Variation A's arm

extension features the arms opening and closing symmetrically, with the wrists crossing in front of the chest, while stepping back twice on each side by bending both legs and having the torso remain centered.  *In contrast*, So Fresh's arm extension features the arms opening and closing asymmetrically, without the wrists crossing in front of the chest, while stepping back twice on the left side and then only once on the right side by bending only the leading leg and having the torso leaning into the side step.  *Compare* Cendali Decl. Ex. C *with* Ex. K.

- Variation B's arm swing features the arms swinging in front of the body with a step to the side where the leading leg bends at the knee, and then the feet consistently meet at or close to the heels.  *In contrast*, the arm swing in So Fresh features the arms swinging to the side of the body with a step to the side where the leading leg straightens while the other leg bends as it comes into the body, and the feet do not meet consistently at or close to the heels, but rather begin far apart and only gradually travel closer as the steps continue.  Similarly, the arm extension in Variation B features the arms opening and closing symmetrically, with the wrists crossing in front of the chest, while stepping to the side twice on each side by bending both legs and having the torso remain centered.  *In contrast*, the arm extension in So Fresh features the arms opening and closing asymmetrically, without the wrists crossing in front of the chest, while stepping back twice on the left side and then only once on the right side by bending only the leading leg and having the torso leaning into the side step.  *Compare id.* Ex. F *with* Ex. K.

- Variation C's arm swing features the body rotating to the side with the arm swing, while the feet take small steps to the side, with a tap of the foot.  *In contrast*, So Fresh's arm swing features the body remaining frontward-facing, while the feet take large steps back, without a tap of the foot.  Similarly, Variation C does not include an arm extension.  *In contrast*, So Fresh does.

1 | *Compare id.* Ex. H *with* Ex. K.

2 | Especially given the short nature of the movements, any copyright would be

3 | thin at best, requiring "virtually identical" copying. *Century Tile, Inc. v. Hirsch Glass*

4 | *Co.*, 467 F. App'x 651, 652 (9th Cir. 2012). As a result, "even relatively small

5 | differences . . . may exclude copyright infringement." *Masterson Mktg., Inc. v. KSL*

6 | *Recreation Corp.*, 495 F. Supp. 2d 1044, 1048 (S.D. Cal. 2007). Thus, Counts I and II

7 | should be dismissed as the works are not substantially similar.[12]

8 | **B.    Plaintiff's Remaining Claims Are Preempted by the Copyright Act**

9 | Plaintiff's non-copyright claims (Counts III through VI) should be dismissed

10 | because they are preempted by the Copyright Act. A state law claim is preempted if

11 | (1) the work is the type of work protected by copyright and (2) the claim seeks to

12 | vindicate rights equivalent to those protected by copyright. 17 U.S.C. § 301(a); *Laws*

13 | *v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006).

14 | As to Prong One, Plaintiff's non-copyright claims are based on the same steps

15 | as his copyright claim. *See* Compl. ¶¶ 63, 71, 79, 87. As choreography is the subject

16 | matter of copyright, 17 U.S.C. § 102(a)(4), Prong One is satisfied. *Cusano*, 473 F.

17 | App'x at 804 (satisfied by types of works listed in 17 U.S.C. § 102(a)). Indeed, like

18 | Plaintiff here, the plaintiff in *Lions Gate Entertainment Inc. v. TD Ameritrade*

19 | *Services Co.* asserted federal and state unfair competition claims ***based on the use of***

20 | ***the dance lift*** from *Dirty Dancing*. 170 F. Supp. 3d 1249, 1254 (C.D. Cal. 2016).

21 | The claims were preempted. *Id.* at 1264 (dance lift subject matter of copyright).[13]

22 | As to Prong Two, no extra element makes Plaintiff's claims different from a

23 |

---

24 | [12] Plaintiff's claims as to Variation C can be dismissed for the additional reason that Plaintiff asserts that So Fresh was added to *NBA 2K* with the release of *NBA 2K16*

25 | on September 29, 2015. Compl. ¶ 31. He also alleges that Variation C was created in 2016. *Id.* ¶ 16. As Variation C was created ***after*** So Fresh was included in the

26 | game, there can be no copyright infringement. *See Oskar Sys., LLC v. Club Speed, Inc.*, 745 F. Supp. 2d 1155, 1163 (C.D. Cal. 2010) (dismissing claim as alleged

27 | infringement occurred "*before* the [registered] version of the work even existed").
[13] If the steps are unprotectable, they still fall "within the 'subject matter of

28 | copyright' for the . . . preemption analysis" as even unprotected subject matter counts. *Entous v. Viacom Int'l, Inc.*, 151 F. Supp. 2d 1150, 1159 (C.D. Cal. 2001).

1  copyright claim as the allegedly infringing act is copying.  Compl. ¶¶ 63, 75, 79.  Such

2  claims are preempted.  *See Maloney*, 853 F.3d at 1019 (affirming grant of special

3  motion to strike and dismissal of right of publicity and unfair competition claims

4  where use was not "independent of the display, reproduction, and distribution of the

5  copyrighted material"); *Lewis v. Activision Blizzard, Inc.*, 634 F. App'x 182, 184 (9th

6  Cir. 2015) (affirming dismissal as right of publicity claim based on use in video game

7  preempted); *Laws*, 448 F.3d at 1144 (right of publicity claims preempted).

8         Moreover, the "Supreme Court has extended this principle of copyright

9  preemption to the Lanham Act and federal trademark protection."  *Lions Gate Entm't*,

10  170 F. Supp. 3d at 1264 (citing *Dastar Corp. v. Twentieth Century Fox Film Corp.*,

11  539 U.S. 23, 33–38 (2003)).  Plaintiff's Lanham Act claim is based on "Defendant's

12  copying and relabeling of Ribeiro's The Dance . . . creati[ng] the false and misleading

13  impression that Defendants were the creators of The Dance."  Compl. ¶ 87.  The

14  Supreme Court, however, has held that the Lanham Act's phrase "origin of goods"

15  "refers to the producer of the tangible goods that are offered for sale, and not to the

16  author of any idea, concept, or communication embodied in those goods."  *Dastar*,

17  539 U.S. at 37.  Thus, when a "claim is more accurately conceived of as attacking

18  unauthorized copying," courts dismiss such claims.  *Slep-Tone Entm't Corp. v. Wired*

19  *for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1250 (9th Cir. 2017);

20  *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008); *Marcus*

21  *v. ABC Signature Studios, Inc.*, 279 F. Supp. 3d 1056, 1072 (C.D. Cal. 2017).

22         **C.    Plaintiff's Right of Publicity Claims Violate the First Amendment**

23         Plaintiff's right of publicity claims also are barred by the First Amendment

24  under California's Transformative Use test.  A right of publicity claim does not lie

25  where a "celebrity likeness is one of the 'raw materials' from which an original work

26  is synthesized" or the "product containing a celebrity's likeness is so transformed that

27  it has become primarily the defendant's own expression rather than the celebrity's

28  likeness."  *Winter v. DC Comics*, 30 Cal. 4th 881, 888 (2003).  To apply the test,

1    courts "examine and compare the allegedly expressive work with the [use of the

2    plaintiff's identity] to discern if the defendant's work contributes significantly

3    distinctive and expressive content." *Kirby v. Sega of Am., Inc.*, 144 Cal. App. 4th 47,

4    61 (2006). "When the value of the work comes principally from some source other

5    than the fame of the celebrity—from the creativity, skill, and reputation of the artist—

6    it may be presumed that sufficient transformative elements are present to warrant First

7    Amendment protection." *Arenas*, 881 F. Supp. 2d at 1191. Thus, the "reach of the

8    transformative use defense is broad." *Id.* at 1190.

9         *Kirby* is particularly instructive. The plaintiff alleged her likeness had been

10    used in a video game to create a character named Ulala. 144 Cal. App. 4th at 51. The

11    court held that Ulala was transformative, relying primarily on differences in physical

12    characteristics. *Id.* at 59. The court also considered the game's setting as Ulala was

13    "a space-age reporter in the 25th century," and the plaintiff was not. *Id.*

14         Similarly, here, So Fresh can be used with any *NBA 2K* player, none of which

15    share Plaintiff's physical characteristics. *See supra* 2. And Plaintiff is not a

16    basketball player. Compl. ¶ 2. These additional elements make So Fresh

17    transformative. 144 Cal. App. 4th at 59; *see also Sivero v. Twentieth Century Fox*

18    *Film Corp.*, No. B266469, 2018 WL 833696, at *10 (Cal. Ct. App. Feb. 13, 2018)

19    ("Simpsonized" character with different characteristics from plaintiff transformative).

20         Further, it also supports a transformative finding that So Fresh is a miniscule

21    part of *NBA 2K*. *See supra* 4. In *Arenas*, the use of a likeness that was "incidental to

22    the show's plot" was transformative. 881 F. Supp. 2d at 1191. In *de Havilland*, even

23    though the plaintiff's likeness was depicted realistically, because it constituted only

24    "4.2 percent" of the defendant's series, the use was transformative. 21 Cal. App. 5th

25    at 864. And in *Sivero*, the court held that *The Simpsons'* use of the plaintiff's likeness

26    was transformative because the allegedly infringing character was "a minor character

27    in the overall constellation of Simpsons characters." 2018 WL 833696, at *10.

28         Finally, Plaintiff concedes that *NBA 2K's* value comes from Take-Two's

1    creativity, skill, and reputation, unassociated with the steps.  Compl. ¶ 4 (*NBA 2K* is

2    the "most popular sports video game franchise in the world").  This too shows its

3    transformative use.  *See de Havilland*, 21 Cal. App. 5th at 864 (transformative use

4    shown by successfulness of series' "screenwriter, director, and producer";

5    "[a]ccomplished writers"; and "[h]ighly-regarded and award-winning actors"); *Sivero*,

6    2018 WL 833696, at *10 (transformative use as "success of *The Simpsons*" does not

7    derive "primarily from Sivero's fame").  Thus, the right of publicity claims fail.[14]

8         **D.    *Rogers v. Grimaldi* Principles Bar the Unfair Competition Claims**

9         Plaintiff's unfair competition claims (Counts V and VI) also are barred by the

10   First Amendment, which permits expressive works, like *NBA 2K*, *see supra* 5, to use

11   trademarks as part of their artistic message.  To assess such protection in this context,

12   the Ninth Circuit has "adopted the Second Circuit's approach from *Rogers v.*

13   *Grimaldi*," *E.S.S.*, 547 F.3d at 1099 (citing 875 F.2d 994, 999 (2d Cir. 1989)), which

14   "is relatively straightforward to apply, and is very protective of speech."  *Novalogic,*

15   *Inc. v. Activision Blizzard*, 41 F. Supp. 3d 885, 900 (C.D. Cal. 2013).  The approach,

16   which applies to "the use of a trademark in the body of the work," has two prongs:

17        An artistic work's use of a trademark that otherwise would violate the Lanham

18        Act is not actionable unless the use of the mark has no artistic relevance to the

19        underlying work whatsoever, or, if it has some artistic relevance, unless it

20        explicitly misleads as to the source or the content of the work.

21    *E.S.S.*, 547 F.3d at 1099 (internal quotation marks and alterations omitted).  It applies

22   to both federal and state unfair competition claims.  *See id.* at 1099, 1101.

23        **As to Prong One**, "only the use of a trademark with *no* artistic relevance to the

24   underlying work *whatsoever* does not merit First Amendment protection."  *Id.* at 1100

25   (internal quotation marks omitted).  "[T]he level of relevance merely must be above

26   zero," and a video game is not required to be "about" the mark.  *Id.*  "This black-and-

27
_____

28   [14]  Satisfaction of the Transformative Use test also requires dismissal of Plaintiff's
        unfair competition claims.  *Kirby*, 144 Cal. App. 4th at 61.

white rule has the benefit of limiting [courts'] need to engage in artistic analysis in this context." *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1243 (9th Cir. 2013).

Here, So Fresh is artistically relevant as it is one of the celebrations that the in-game basketball players can perform, *see supra* 4, and Plaintiff admits the artistic relevance by acknowledging that the dances in *NBA 2K* "are incredibly popular." Compl. ¶ 29. This is more than sufficient to qualify as even a "tenuous" association satisfies Prong One. *Roxbury Entm't v. Penthouse Media Grp., Inc.*, 669 F. Supp. 2d 1170, 1176 (C.D. Cal. 2009); *see E.S.S.*, 547 F.3d at 1100 (video game's inclusion of strip club with similar name to plaintiff's trademark relevant to goal of parodying East Los Angeles); *Novalogic*, 41 F. Supp. 3d at 900–01 (artistic relevance where use added "to the enjoyment users receive from playing the complicated game").

**As to Prong Two**, a work can be subject to an unfair competition claim only "if the creator uses the mark or material to explicitly mislead consumers as to the source or the content of the work." *Brown*, 724 F.3d at 1245 (requiring "explicit indication," "overt claim," or "explicit misstatement"; internal quotation marks and alterations omitted). The "mere use of a trademark alone cannot suffice to make such use explicitly misleading." *E.S.S.*, 547 F.3d at 1100. Yet, Plaintiff identifies no misleading conduct by Take-Two other than use of the steps. Further, So Fresh is only a tiny part of *NBA 2K*, *see supra* 4, which further militates against a finding that the game is explicitly misleading as to its source. *See VIRAG, S.R.L. v. Sony Comput. Entm't Am. LLC*, 699 F. App'x 667, 668 (9th Cir. 2017) (affirming grant of Rule 12(b)(6) motion where trademark was used in video game because the plaintiff did not allege an "explicit indication, overt claim, or explicit misstatement"). As *NBA 2K* is protected by the First Amendment, dismissal is appropriate. *See id.*; *Brown*, 724 F.3d at 1247–48 (affirming grant of motion to dismiss); *Metrano v. Twentieth Century Fox Film Corp.*, No. 08 Civ. 086314, 2009 WL 10672576, at *5 (C.D. Cal. July 16, 2009) (granting Rule 12(b)(6) motion to dismiss).

### E.   Plaintiff Is Not Entitled to the Relief Requested in the Complaint

Plaintiff's remedy requests are similarly contradicted by established law.  *First*, Plaintiff requests "punitive and/or exemplary damages" for his federal claims, Compl. 21:7, 21:14, 22:11, but such relief is not available.  *See Abbywho, Inc. v. Interscope Records*, No. 06 Civ. 0672, 2008 WL 11406099, at *5 (C.D. Cal. Jan. 7, 2008) (no punitive damages for Lanham Act claims); *Saregama India Ltd. v. Young*, No. 02 Civ. 9856, 2003 WL 25769784, at *1 (C.D. Cal. Mar. 11, 2003) (no punitive damages for copyright claims).  *Second*, Plaintiff requests "an award of damages" for his state law unfair competition claim, Compl. 22:5, but "California law does not recognize the recovery of damages by individuals for unfair business practices." *Kates v. Crocker Nat. Bank*, 776 F.2d 1396, 1398 (9th Cir. 1985).  *Third*, Plaintiff requests "attorney's fees" for his copyright claims, Compl. 21:8, 21:15, but "no award of . . . attorney's fees . . . shall be made for . . . any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work."  17 U.S.C. § 412.  Plaintiff is not entitled to attorney's fees as he did not apply to register his works until December 15, 2018, Compl. ¶ 41, and *NBA 2K16* was released on September 29, 2015.  *Id.* ¶ 31; *see Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (attorney's fees not available where "infringement commenced prior to . . . registration date"); *see also Solid Oak Sketches, LLC v. 2K Games, Inc.*, No. 16 Civ. 724, 2016 WL 4126543, at *2 (S.D.N.Y. Aug. 2, 2016).[15]

## IV.   CONCLUSION

As Take-Two informed Plaintiff of the Complaint's deficiencies before filing this Motion and Plaintiff did not amend, Take-Two seeks dismissal with prejudice.

---

[15]   Plaintiff also would not benefit from the three-month publication safe harbor as the Variations were published in 2014, 2014, and 2012 respectively. Cendali Decl. Exs. A, D, G, but he did not apply to register them until 2018.  Compl. ¶ 41.

1    DATED:  February 13, 2019

2                                              */s/ Dale M. Cendali*
                                              _____
3                                              Dale M. Cendali (admitted *pro hac vice*)
                                              dale.cendali@kirkland.com
4                                              Joshua L. Simmons (admitted *pro hac vice*)
                                              joshua.simmons@kirkland.com
5                                              Shanti S. Conway (admitted *pro hac vice*)
                                              shanti.conway@kirkland.com
6                                              Megan L. McKeown (admitted *pro hac vice*)
                                              megan.mckeown@kirkland.com
7                                              KIRKLAND & ELLIS LLP
                                              601 Lexington Avenue
8                                              New York, New York 10022
                                              Telephone: (212) 446-4800
9                                              Facsimile: (212) 446-4900

10                                             Sharre Lotfollahi (S.B.N. 258913)
                                              sharre.lotfollahi@kirkland.com
11                                             KIRKLAND & ELLIS LLP
                                              333 South Hope Street
12                                             Los Angeles, CA  90071
                                              Telephone:  (213) 680-8400
13                                             Facsimile:  (213) 680-8500

14                                             *Attorneys for Defendants Take-Two*
                                              *Interactive Software, Inc.; 2K Sports,*
15                                             *Inc.; 2K Games, Inc.; and Visual*
                                              *Concepts Entertainment*

16

17

18

19

20

21

22

23

24

25

26

27

28